I'm here for the 10 o'clock case, People of the State of Illinois v. Darius Crump, No. 5-13-0556. Let me state for the record, you can see there are only two of us here today. We, of course, sit in panels of three. Judge Cates could not be here today. However, she will be a fully participating member of this panel. She'll listen to the oral arguments on the Supreme Court's website. And he is still on this panel. So, Mr. Wilson, you may proceed, sir. May it please the Court. Good morning, Your Honor. My name is Ryan Wilson, and I represent Darius Crump on behalf of the Office of the State of Illinois. I plan to confine my remarks largely to Argument 2 of the brief today and also discuss the State's motion for a summary agreement as time allows. There were only two people present when Darius Crump shot Cortez Mason on June 5th of 2012. And those people were given different accounts. Darius explained that he and Cortez had gotten into a verbal argument that turned physical. At some point, Cortez's motion moved in a way that made Darius believe that he was about to pull out a weapon. Darius drew a gun and shot several shots in quick succession in Cortez's direction. Cortez claimed that Darius walked up, accused him of setting up a robbery, and just began shooting. This is a closely balanced case where you have two people who were present at the time of the offense giving varying stories. The jury should have been left to decide which story was credible, but they weren't. Instead, during the closing argument, the State's attorney, someone who obviously wasn't there at the time of the shooting, interjected a third theory into this case. According to the State, Darius shot Cortez during the robbery. According to the State, the shooting couldn't have happened in the manner that Darius claimed it did because Darius fired a revolver, which couldn't be shot in quick succession like, for example, a semi-automatic handgun could. According to the State, Darius just should have run away. And the State told the jury that if it acquitted Darius, it would be saying that it's justifiable in St. Clair County to shoot someone who you heard has a bad reputation. Now, I'm going to talk about each of those individually. They're all objectionable and all so prejudicial that either independently or cumulatively, they justify reversal in this case. First, the State told the jury that this was a robbery. It said, you know what it's also evidence of? Defendant going through Cortez's pockets after he shot him. It continued a little later saying, you robbed me, I'll rob you back. But there's absolutely no evidence here that there was a robbery. Now, defense counsel objected to that statement and the court overruled that objection and said that it was a reasonable inference from the evidence that a robbery had occurred. But in this case, there's no evidence that anyone witnessed Darius rob Cortez. Cortez didn't testify he was robbed and the State shouldn't have known that there was no robbery here because $5 was found in Cortez's pockets after he was shot. Now, this is reminiscent of the Peeble v. Bear case that cited in the briefs where a defendant was on trial for shooting her husband. And during closing argument, the State said, look, she had the peace of mind to wipe her fingerprints from the handgun before she, I believe, was called to police. The defendant appealed and argued that was an improper statement and he thought that he agreed because not only was there no evidence that the defendant in that case had wiped her fingerprints from the handgun, there was no evidence whether there were any fingerprints on the handgun or not. This, the fact that the State argued that there was a robbery here is no different than neither in Briar. In anything, it casts a shadow over Darius's defense. Darius claimed this was self-defense, not a robbery, and the court, by overruling the defense counsel's objection in saying that there was inferences that could be made from the evidence that showed that this was a robbery, eviscerated Darius's self-defense defense. The State also said that Darius couldn't have shot the shots in the manner that he claimed. During his police statement, he said that he fired them in quick succession. Now, on its face, this may not look like clearly prejudicial error, but when you think of the practical effect of the State's comment, I believe that it's clear that it is. This was errored for two reasons. The first is the State, by saying no, it could have been fired in quick succession,  He told the police how he fired that gun, and the State, based on no trial evidence whatsoever, told the jury that it couldn't have been done that way. But maybe more importantly is the fact that the State portrayed what happened here not as someone who was shooting rapidly while he was trying to get away from somebody he believed might have a weapon. Instead, the State portrayed what happened here as a deliberate shooting of several rounds, very methodically, during an attempted robbery. And again, defense counsel objected to this, and the court said no, it's a reasonable inference based on the evidence here. There was absolutely no evidence supporting this inference, and this, as well, is prejudicial error. The State then went even further. It had talked about these factual matters and arguably misrepresented the record regarding what these factual matters were. But then it moved on to an issue of law. It told the jury that Darius just shouldn't run away if he believed that Cortez had a gun. But there's no obligation in Illinois law that somebody that believes they're being threatened first needs to run away before exercising force. Darius had a right to defend himself if he believed that Cortez had a weapon, and his statement to police clearly evidences his belief that, in fact, he did. Finally, the State made what I believe is a very emotional, very visceral argument to the jury, that if you acquit Darius Crump, you will be saying that in St. Clair County, you can shoot someone merely because you think they have a bad reputation. Now, these are jurors. And there was an objection to that. And there was an objection to sustaining. That's correct. But these are jurors that live in this community. They're jurors who arguably work and have family in the St. Clair County area. They're jurors who don't want to make a decision that potentially makes their community more dangerous. And that's exactly what the State was telling them that they needed to do. Don't acquit Darius because of the evidence here, convicting so we know that it's not proper to just shoot someone if you believe they have a bad reputation. That was something that would resound heavily with the jury as they go back and consider, during deliberations, Darius' guilt and innocence. And it's sort of a statement and a sort of a, again, emotional and visceral argument to the jury that either can't be overcome by the court merely sustaining an objection here. The jury should have been allowed to decide who to believe. It should have been left to decide what actually happened here. Was this a case of soft defense? But it wasn't because of the State's improper remarks and, maybe more importantly, because some of those improper remarks were overruled after defense counsel objected and the jury was told that it was a reasonable inference based on the evidence when there is absolutely no evidence to support what the State argued. Now, before my time expires, I did also want to move on very briefly to the State's motion for summary remand in this case. The State has asked that this case be remanded for imposition of sentence on count three, another aggravated battery with a firearm count or conviction. The State has previously filed a motion for a supervisory order with the Illinois Supreme Court. It's also filed a mandamus petition with the Illinois Supreme Court. Both of those have been denied. The State, in its motion for supervisory order, said that it was entitled to supervisory relief because the normal appellate process would not afford adequate relief. It added that the people had no right to appeal the court's sentencing decisions. The State is absolutely right. Darius's appeal can't be used as a means of increasing his criminal sentence. And I know the State disagrees with me on that point, but when you think of the practical effect of what the State is asking here, Darius is currently serving a 16-year sentence, two consecutive terms of eight years. If his case is remanded under the State's theory, and based on the court's findings at sentencing, Darius would be sentenced to an additional consecutive eight-year sentence. That would increase the sentence that he is serving, and it's something that very recently the Illinois Supreme Court looked at in the Castleberry decision and said, no, an appeal is not an opportunity for the State to increase a defendant's sentence. Instead, if the State wants to do that, they have a remedy. They can file a mandamus petition. The State answers that Castleberry doesn't apply here. We're not talking about reversing and sending it back for a new sentence. They're saying we never got a sentence, so there was never a final judgment. It is kind of confusing, at least just reading the appendix to the State's motion, what the trial court was doing. I mean, it would be one thing to say, I've heard the arguments, and based on the law I'm only sentencing him on two counts and not the other three. And, you know, this is a complicated issue, and we all need guidance from the appellate court. In other words, saying that I'm not asking for guidance from the appellate court in this case. I'm asking just in general we need guidance from the appellate court on this issue. On the other hand, what he says is I'm not imposing judgment on the other three counts at this time pending further direction from the appellate court. And he says if the appellate court tells me if and when the appellate court reviews this, if they say, Judge, you've got to reevaluate this, is it clear to you what the court was doing? Well, it is not. Thompson, sorry, may I just answer? Go ahead and answer my question. As far as your question, first, it's not clear what the court was doing here. It appears to me that the court may be asking for what amounts to an advisory opinion from this court that is something that, one, I don't think would be properly reviewed, but two, certainly isn't something that I think this court wants to open the door to. Judges are responsible for making sentencing decisions. They're responsible for interpreting statutes in a bench trial, for example, convicting a defendant. What we don't want to do is have a court, a trial court, say this decision is too difficult for me to make, so let's go ahead and appeal it. I'll have the appellate court figure it out, and then it can be sent back later, and we'll figure it out. That's not what Elmwood Law holds, and that's not what should be done in this case. Thank you, Your Honor. Mr. Bailey? Thank you, Your Honor. May it please the Court? Mr. Nelson? So I'll go back and start with the motion for remand. A couple points to give a little bit of context to this, because the defendant's correct that I did file a motion for supervisory and or mandamus relief in the Supreme Court. The timing of that was that it happened after my consultation with the prosecutor, immediately after the sentencing hearing, and this is prior to even a notice of appeal even being filed in the case. So point number one, we're not talking about something that's done later on, and we're going, oops, now what are we going to do? It was something we attempted first, right off the gate. And secondly, we don't really know why the Supreme Court denies it, because this Court notes it didn't make mention in the Court's ruling, and it gets some guidance from the appellate court, so perhaps that perspective is what we need the appellate court to handle this. I don't know. I'm not going to sit here and speculate. But there's not a conclusive effect to the Supreme Court, at least I would argue. There's no conclusive, like, race judicata effect to the Court's denial of the mandamus action that would prevent this Court from affording relief. I'm not swayed by the unfairness argument, because what we have here, by the Court's ruling, is that it's a fine and serious bodily harm as to three class X counts. I don't believe the law at all, in the Court of the Law, precludes, in fact, mandates, the imposition of consecutive sentences on all three of those. So if there's any unfairness, it's really more to the people of the state of Illinois that they have not gotten a sentence on accounts that they proved beyond a reasonable doubt to the jury that required or mandated a consecutive sentence. So, and I think finally— Go ahead. No, that's okay. Go ahead. Okay. And I think the final point— Liz, I'm not at all convinced of the applicability of Casselberry. Casselberry, as this Court's aware, deals with void versus voidable. It determines matters of what is, you know, justiciability and jurisdiction. But what you have, either a void or a voidable type of judgment, nonetheless, is a final judgment, which is appealable, and therefore, you know, has some jurisdictional implications. Our argument is that there's simply no sentence or an incomplete sentence here, so you don't even get to that issue that was addressed in Casselberry with regards to void versus voidability. So I think that we have a situation here where it's not— the state is—one final thing I should mention, because counsel mentioned this as well, you know, the state said, well, we don't have any appellate rights. We don't have appellate rights independent of anything else. That's exactly what the Court said. Casselberry. You know, we can't appeal to your honors just on our own what we feel is an incorrect sentence. We're sort of hamstrung by either the—now— And I have not had the entire record to look at yet, so I'm just looking at the portion of the transcript that was attached to your motion. But it appears to me that the trial court was struggling with what to do in this situation, whether a sentence should be imposed on all five counts, whether it should be on one, two, or three under the statute, on the issue of whether or not this was all a single course of conduct and so forth. Correct. And he reached a decision and said, two is what I'm going to sentence on. Correct. In effect saying, that's what I think the law requires me to do. So he decided that issue. Okay. And then in effect said, if this case goes up and the appellate court tells me I should do something different, then I'll do something different, which is true in every case. Okay. But I have at this point ordered, this is what my order is, this is what my sentencing order is. Correct. So if that's true, it would seem to me like he gave his complete sentence subject to appellate review. And now the defendant hasn't raised the issue of sentence, you know. Now, it also seems to me like what you're asking us to do in the motion to remand is you want us to review the sentence he imposed and say he was wrong, and only if we say he's wrong do we send it back. So we're in effect, at the behest of the state, reviewing the sentence. And we can't do that, really, can we? Let me carry that proposition with us, and it's something almost existential, I suppose. Can a court render a final judgment by refusing to enter a final judgment? Well, it's, I mean. The position, what you're saying, and I don't understand you correctly, is this is what his point is, and therefore this is appealable, but a non-final judgment doesn't transform into a final judgment because the court, you know, the judge on the back of the chair deems it to be so. But procedurally, in order for us to reach that. Correct. Don't we have to, in effect, review what he did, decide he was wrong, and then send it back? Well, you have to review if he is wrong only within the parameters of deciding whether or not there's a final judgment. I mean, this is a. . . In order to say there's not a final judgment, we have to determine that he had to enter a sentence on more than the two counts.  We know, or let's just presume for the sake of argument, that a court is required in order to create a final judgment, which is appealable, entry of sentence on all counts in which a finding of guilt has been made. If the court does not do so, there is not a final judgment. If there is not a final judgment, then in effect, essentially, this court doesn't have jurisdiction, although case law does say that this court is required to be handed back to the circuit court to enter that final judgment. Let me stop you there. Okay. Sorry. That was weird. Well, actually, never mind. Never mind, because he does say. . . No, no, I'm sorry. He does say. . . He not only says I'm withholding a sentence, he says I'm not imposing judgment on the other three counts. Well, sentence is the judgment term. I mean, I think. . . Yeah, yeah. So, I mean, I guess what I'm saying is that we have to sort of ignore what the judge says. I know it's hard to do. We have to ignore what the judge says and look at what the judge did. The judge either entered a final judgment or it didn't. If it didn't, then that has considerable jurisdictional implications that this court is bound to do something about it. It's not discretionary for this court. There's no final judgment. And, in fact, you can't even run a decision in this case until you have a final judgment. Okay. I'm just trying to think through other situations. And it's fairly common. Somebody's charged with murder in various ways. Sure. And he's convicted on five. . . I think we had a case pending today convicted on ten counts of murder. And the judge vacates all the convictions except one because he can't be sentenced on more than one. Right, right. I mean, this is always an issue, you know. I'm sorry. I'm just talking out loud. I'm really just sort of conflating the idea that you cannot have a sentence greater than the aggregate of two sentences for two consecutive sentences. The sum of the two. . . In other words, like two class sentences cannot be greater. . . It can't string together eight consecutive sentences to be greater than 120 years for a class sentence. And that's what the trial court was trying to do. But the court is looking at it incorrectly. That that limitation is only on the aggregate sentence, not on whether the sentence can be imposed in the first place. And that's where things sort of fell apart, at least from our perspective. Okay. So I guess if you agree with me at all, then I think there's really not much left to do here. And I think it's important to point out that the defendant . . . We're not asking the sentence to be increased, obviously. We're just asking for a sentence. But I think secondarily, nothing the defendant argues here is lost at all. Because it's not sort of setting up . . . I mean, the trial errors or the alleged trial errors are still there for the court to review. We just want complete judgment. And then the court, I believe, what we're asking if it can to none of us wants a complete judgment made. I don't know. It gets very complicated. Because is it a matter of having to re-appeal or not? You've asked for a new sentence again. Yeah. And I think that does sort of create a situation. But nonetheless, the defendant is not denying an appeal of a trial error, notwithstanding what this court ultimately decides to do with the motion. I told Mr. Wilson I don't think it's done a lot of times. But I'm glad, to be honest. I think I've laid out, as best as I could in my brief, my responses to the defendant's arguments. In the 30 seconds I have left, if the court has any questions on those, I'd be happy to answer them. I'm fine with jurisdictional arguments. So I'd be happy for you to get something to do with it. We have to determine our jurisdiction. I mean, there's the analysis of the paramount consideration. Yeah. Thank you for your time. All right. Thank you. And all right. Rebuttal. Mr. Wilson. I agree with you. In order to address this issue regarding whether the state's motion should be granted or not, this court's not just looking at did the court impose a full judgment. The court, in reaching its decision, was very confused about how the statute actually works and what happens when you have a number of offenses that were committed roughly at the same time. So in order for this court to issue a decision in response to what the trial court has requested, you have to decide several other issues. You have to decide, was the judge interpreting the statute correctly? Is this a case where there is consecutive sentencing? Is this a case where consecutive sentences can be given if all of the offenses are part of the same occurrence? It's not as cut and dry as the state would suggest here. Can we just look at it and modify the sentence? I mean, I'm not talking about increasing it, but just say judgment centered on the other three convictions? Could we do that? It's my opinion that you could not. The reason being, you know, the judge kind of sidetracked all this during the sentencing hearing when this issue came up. It left things unresolved, not only for Darius, but for the advocates who were there making this argument as well. And if this court were to try and reform the sentence, I see two problems with that. One, there may be issues that are left unresolved that an attorney or Darius may want to bring to the sentencing court's attention in construing the correct statute. If you're arguing there are things unresolved that should have been resolved, that's kind of what the state's saying, isn't it? Well, it's, one, we're not appealing the sentence here. The state essentially is the one that's doing it, which, you know, part of the argument is that it's an improper cross-appeal. I can find no authority for what the state is asking to. Let me take that back. There is one case that the state has cited. It's Peeble v. Robinson, where a defendant's case was remanded for the imposition of sentence, and the sentence that would be imposed was a consecutive sentence. The problem with using Robinson in this case is the defendant didn't contest what the, it actually was different, but the defendant didn't contest it. It wasn't brief, and it relied on two numerous Supreme Court decisions that, by the way, remained for the imposition of concurrent sentences, sentences that wouldn't function to increase the overall sentence of the defendant. And that brings me to my second point with your question regarding this Court kind of revising the sentence here. This Court couldn't revise the sentence without increasing the sentence. We talk about Cassavary, and the state says, you know, Cassavary doesn't have much applicability in this case, and I disagree with that. In Cassavary, the Court said, although the appellate court may not, under our rules, address a request by the state to increase a criminal sentence which is illegally low, the state may, in appropriate circumstances, seek relief from this Court via a writ of mandamus. That is exactly what's happened here. Darius's position essentially is the state can't use his appeal in order to advance its own agenda. The Court did issue a judgment here. It imposed two consecutive eight-year terms upon Darius, and he's spending those in prison as we speak. Any remanding for the imposition of an additional sentence increases that length of the sentence that he is spending. Additionally, just very briefly, the state said, you know, nothing would be lost here if this case were remanded, and I disagree with that point. Because if the case were remanded and an additional sentence were imposed, in order for this Court to have jurisdiction to review the propriety of that sentence, there would have to be a new notice of appeal filed. It wouldn't be fair to Darius at this point. His case has already dragged on for a year and a half or, I believe, almost two years now. Now, based on the state's request, we're going to request we're going to send it back to the trial court, have the trial court add time to his sentence, have to file a new appeal, and then he has to go through the appellate process all over again. I realize that the state says, well, they're the ones that are suffering here. I would argue the process has let Darius down here. The judge imposed a sentence. It is a sentence that Darius is currently serving. He has a right to some finality with this. And the more that this case drags on, the longer it's going to be for him to get that finality. So for those reasons, I would ask that the state's motion be denied and that Darius' conviction be reversed. Thank you, Your Honor. All right. Thank you both for your brief and your arguments on this kind of interesting case. Probably only interesting to lawyers as far as the legalities of it. But we'll take this matter under advisement and issue a written decision forthwith. Thank you. We're going to see if the other parties are here. I'm going to see if Jamie's out there. Well, I appreciate it, Mr. Bailey. Thank you, Your Honor. Mr. Stewart, it's been a pleasure arguing with you. Thank you. Did you make an announcement? No. I mean, I guess they're not here. Oh, okay. We'll go ahead with this, but they won't hear anything. Oh, okay. We'll take a recess until 11 o'clock. Yeah, tell Mr. Bailey to leave.